LOZEAU DRURY LLP
Michael R. Lozeau (State Bar No. 142893)
Douglas J. Chermak (State Bar No. 233382)
     E-mail: doug@lozeaudrury.com
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205

Attorneys for Plaintiff
ORANGE COUNTY COASTKEEPER

*Plaintiff's Additional Counsel Listed On Next Page*

MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP
Eric Chang (State Bar No. 295810)
     E-mail: echang@mmwr.com
437 Madison Ave., 29th Floor
New York, NY 10022
Tel: (212) 867-9500
Fax: (212) 599-1759

Attorneys for Defendant
BRISTOL INDUSTRIES, LLC

**JS-6**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>BRISTOL INDUSTRIES, LLC, a Delaware corporation,<br><br>        Defendant. | Case No. 8:17-cv-00471-JVS-JCG<br><br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

ORANGE COUNTY COASTKEEPER
Colin Kelly (State Bar No. 266956)
    E-mail: Colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Tel: (714) 850-1965

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper") and Defendant Bristol Industries, LLC. ("Defendant" or "Bristol"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS**, Coastkeeper is dedicated to protect and promote water resources that are swimmable, drinkable, fishable, and sustainable;

**WHEREAS**, Bristol is the owner and operator of an aerospace manufacturing facility, located at 630 E Lambert Road in Brea, California, hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS**, the Facility falls within Standard Industrial Classification ("SIC") codes 3452 (Bolts, Nuts, Screws, Rivets and Washers), and 3471 (Electroplating, Plating, Polishing, Anodizing, and Coloring);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, the Permit includes the following requirements: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best

Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce pollutants that are causing or contributing to any exceedance of water quality standards in a receiving water;

**WHEREAS**, on January 9, 2016, Coastkeeper served Bristol, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice letter"), alleging violations of the Act and the Permit at the Facility;

**WHEREAS**, on March 16, 2017, Coastkeeper filed a complaint against Bristol in the United States District Court, Central District Court of California, entitled *Orange County Coastkeeper v. Bristol Industries, LLC* (Case No. 8:17-cv-00471-JVS-JCG); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint") based on the 60-Day Notice letter;

**WHEREAS**, Coastkeeper contends in its 60-Day Notice letter and Complaint that, among other things, Bristol has repeatedly discharged storm water exceeding Numeric Action Levels established for certain Waters of the United States to which Bristol discharges its storm water under the Permit, which discharges violate Bristol's Permit and the Clean Water Act;

**WHEREAS**, Bristol denies all allegations set forth in the 60-Day Notice letter and Complaint relating to the Facility and specifically contends that it has taken all necessary and appropriate actions specified in the Permit to manage storm water discharges from the Facility in compliance with the Permit and Clean Water Act;

WHEREAS, since it acquired its interest in the Facility in March 2014, before issuance of Coastkeeper's 60-Day Notice Letter, Bristol has invested millions of dollars in Facility improvements, BMPs and other measures;

WHEREAS, the Settling Parties, through their authorized representatives and without either adjudication of Coastkeeper's claims or Bristol's factual or legal defenses, and without admission by Bristol of any alleged violation or wrongdoing, believe it is in their mutual interest and choose to resolve in full Coastkeeper's allegations in the 60-Day Notice letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

WHEREAS, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.     Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.     Plaintiff has standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this

Consent Decree.

## I. <u>OBJECTIVES</u>

6. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to add additional procedures or practices at the Facility as specified herein related to storm water management, with the goal of improving storm water management capabilities at the Facility and to bring the Facility into greater compliance with the Clean Water Act. In light of these objectives and as set forth fully below, Bristol agrees to comply with the provisions of this Consent Decree in addition to, and not in lieu of its on-going work to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act; nothing in this Consent Decree is intended to modify or amend the Facility's Permit.

## II. <u>AGENCY REVIEW, EFFECTIVE DATE, TERM OF CONSENT DECREE, AND EARLY TERMINATION</u>

7. **Agency Review:** Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the U.S. EPA (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review, consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling parties agree to meet and confer to attempt to resolve issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Parties shall submit the Consent Decree to the Court for entry.

8. **Effective Date**: The Effective Date of this Consent Decree shall mean the day this Consent Decree is entered by the Court.

9. **Term of Consent Decree**: This Consent Decree shall terminate three (3) years from the Effective Date, unless there is an ongoing, unresolved dispute

regarding Bristol's compliance with the Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

10. **Early Termination:** If Bristol's should cease industrial operations at the site and file a Notice of Termination ("NOT") under the Storm Water Permit before the termination date of this Consent Decree, Bristol shall send Coastkeeper a copy of the proposed NOT concurrent with its submittal to the Regional Board. Within ten (10) days of the Regional Board's approval of the NOT, Bristol's shall notify Coastkeeper in writing of the approval and promptly pay all amounts then due hereunder as provided herein. In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree, Bristol shall notify Coastkeeper within ten (10) days of the transition.

III. **COMMITMENTS OF BRISTOL**

A. **Storm Water Pollution Control Best Management Practices**

11. In addition to maintaining the current BMPs at the Facility, Bristol shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Permit. Specifically, Bristol shall develop and implement BMPs consistent with the BAT and BCT standards as required by the Permit, to prevent and/or reduce contamination in storm water discharged from the Facility, and to comply with applicable water quality standards.

12. Listing the BMPs identified herein shall not preclude Bristol from implementing other BMPs not listed, and does not require amendment of this Consent Decree in the event that Bristol implements additional BMPs beyond those listed or substitute BMPs that are intended to assist the Facility in achieving lower concentrations of the Table 1 values for those pollutants listed herein, or if changes in operations or the industrial activities at the Facility eliminate pollutant sources

identified in the SWPPP and/or this Consent Decree, making the BMPs previously associated with those pollutant sources unnecessary. Bristol shall notify Coastkeeper of BMP changes pursuant to the notice sections of this Consent Decree.

13. **Bioswale**: Bristol shall complete installation of the bioswale to treat and partially retain storm water discharges from the all industrial areas at the Facility, as identified in the revised SWPPP. The onsite storm water associated with industrial activity will be directed to the bioswale via surface flow as well as sub-surface conveyance structures.

14. <u>Bioswale Capacity</u>: The bioswale shall have a capacity of not less than 12,000 square feet yielding not less than 4,000 cubic feet of treatment for storm water generated from precipitation on the Brea Facility.

15. Bristol shall maintain the bioswale in accordance with the design engineer's specifications throughout the term of this Consent Decree.

16. <u>Bioswale Inspection Logs</u>: Upon completion of the bioswale, Bristol shall inspect the completed Bioswale not less frequently than monthly. Bristol's annual storm water report shall include monthly photographs of the bioswale taken during each monthly inspection specified under the Permit. The Bioswale monthly inspection record maintained by Bristol under the Permit shall be made available for inspection by Coastkeeper at any site inspection or otherwise within thirty (30) days of an advance request by Coastkeeper.

17. <u>Structural Improvements</u>: Bristol shall implement the structural improvements in accordance with the schedule herein. During the term of this Consent Decree, Bristol shall inspect and maintain such structural improvements in good operating condition and shall promptly repair any damaged or degraded structural BMPs. Within fourteen (14) days of each of the above improvements, Bristol shall e-mail Coastkeeper digital photographs confirming said improvements.

18. <u>Maintenance and Repair Record for BMPs:</u> Beginning on the Effective

Date of installation, Bristol shall note in its monthly storm water facility and BMP inspection report, its maintenance and repair activities to BMPs required hereunder which were undertaken in the preceding calendar month, or which are planned for the next calendar month. For each structural BMP, the note shall include the location of the structural BMP, the date and time of the repair, and the identity of the person performing the repair.

19. **Additional BMPs**: The BMPs included in this Section constitute a preliminary approach to storm water management at the Facility for the first year of the Consent Decree. If, after implementation of these BMPs, the sampling conducted in accordance with Section IV of this Consent Decree indicates the Facility's storm water discharges exceed the Numeric Limits in Table 1 or do not meet applicable water quality standards, Bristol, in accordance with its Permit and applicable law as well as with this Consent Decree, shall promptly develop and implement such additional BMPs as may be necessary to further reduce concentrations of the contaminants of concern.

20. **Structural Improvements to Storm Water Management Measures at the Facility.** By January 1, 2018, unless otherwise indicated, Bristol shall implement the following structural improvements to storm water management at the Facility:

20.1. By January 1, 2018, Bristol shall engage the services of a professional engineer and contractor to survey and design a revised storm water drainage system for the west side of the Facility from the shipping and receiving area south to the Waste Water Treatment Unit 1. This drainage system shall be designed to better convey larger volumes of rainwater accumulating in the area adjacent to the truck dock, parking lot, driveway areas, and contact areas surrounding the waste water treatment unit via appropriate conveyance to the head of the bio-swale as determined from the initial survey and design. Subject to permitting and contracting

constraints, Bristol shall implement the revised system within 180 days of the Effective Date of this Consent Decree.

20.2. Bristol shall purchase and implement Ultra Filter Socks (HMRM 1.0 for Heavy Metals and SORB 44 for Oils and Hydrocarbons) on the storm water drains that to the bio-swale located from the parking lot (SORB 44) to the Waste Water Treatment Area (HMRM 1.0).

20.3. Within ninety (90) days of the Effective Date of this Consent Decree, Bristol shall inspect, repair, paint and/or replace the deteriorating siding on Building 2.

20.4. By January 1, 2018, Bristol shall engage the services of a contractor to survey and recommend repairs to the pavement in the chemical storage area, and recommended repairs shall be made within one hundred eighty (180) days of the Effective Date of this Consent Decree.

20.5. By March 1, 2018, Bristol shall implement curbing or re-route the following storm water discharges/flows:

20.5.1. The west side of Building 1 in the vicinity of the downspout.

20.5.2. The downspout on the west side of Building 2 that flows towards the curbed area for the scrubber.

20.5.3. The downspout drainage from Abrasive Blasting Building from southward-directed to northward-directed, such that the downspout drainage flows toward the access road and away from the hazardous waste and chemical storage area.

20.6. Within fourteen (14) days of each of the above improvements, Bristol shall e-mail Coastkeeper digital photographs confirming said improvements.

20.7. The parties recognize that Bristol may have commenced and/or completed some of these measures described in this Paragraph 20, and

Paragraph 21 below, prior to the Effective Date of this Consent Decree. Nothing herein is intended, nor shall it be construed as requiring that any such completed work be redone, and for purposes of interpretation, deadlines for e-mail notifications required hereunder for work completed prior to the Effective Date shall run from the Effective Date of this Consent Decree.

21. **Non-Structural Storm Water Management Practices**: Bristol shall implement the following storm water management measures:

21.1. Housekeeping Improvements: Within ninety (90) days of the Effective Date of this Consent Decree, Bristol shall implement the following improvements to housekeeping measures at the Facility:

21.1.1. To reduce the potential for entrainment of dust and other pollutants that might be mobilized doing storm events, Bristol shall clean out the cracks in the pavement on the west side of Building 1.

21.1.2. Bristol shall relocate the filter cake bins to a covered area.

21.1.3. Bristol will evaluate increasing the frequency of sweeping (*e.g.*, sweeping before predictable rain events) and investigate alternatives that may include the use of a walk behind sweeper or a ride along sweeper with a dust hopper to capture the swept matter for disposal.

21.1.4. To filter potential pollutants deposited on the roofs of buildings at the Facility where manufacturing occurs, Bristol shall evaluate the use of downspout filters (such as and/or comparable to BioClean's Downspout, the downspout filtration system by CleanWay, the Flogard by Kristar, or equivalent) on, at a minimum, 5 out of the 12 downspouts

on Building 1 and all 5 downspouts on Building 2.

21.1.5.   Within fourteen (14) days of each of the above improvements, Bristol shall e-mail Coastkeeper digital photographs confirming said improvements.  With respect to the measure in Paragraph 10(c), Bristol shall e-mail Coastkeeper an update describing the decision regarding the sweeping measures and downspout treatment devices.

21.2.   <u>Rain Gauge</u>: Bristol shall install a rain gauge capable of measuring and recording rainfall from at least 0.1 inches at the Facility.  Bristol shall provide rain gauge data to Coastkeeper within fourteen (14) days of receipt of a written request by Coastkeeper.  Bristol shall use rain gauge data to evaluate the effectiveness of the Bioswale in retaining storm water generated by qualifying storm events, and record such effectiveness calculations in the annual storm water report referenced in Paragraph 16.

**B. Employee Training**

22.   <u>Training Program</u>: Within forty-five (45) days of the Effective Date, Bristol shall develop and have begun to implement an employee training program to ensure: (1) that there are sufficient numbers of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree; and (2) that these responsible employees are appropriately trained to perform the activities required under the Permit and this Consent Decree ("Training Program").  At a minimum, the Training Program shall require the following:

23.   <u>SWPPP and BMP Training</u>: Bristol shall train all employees who are responsible for implementing activities necessary to meet elements of the SWPPP ("Responsible Employees"), or who work in areas where industrial materials or activities are exposed to storm water, on the SWPPP and on the

BMPs added under this Consent Decree to ensure that BMPS are implemented effectively and on schedule, and that structural BMPs are maintained properly. Bristol shall train such employees and Responsible Employees on their specific responsibilities in implementing BMPs. The training must include proper handling (collection, storage, and disposal) of hazardous materials.

24. <u>Storm Water Sampling Training</u>: Bristol shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory or analyzed onsite, as applicable.

25. <u>Frequency</u>: The Training Program shall be repeated annually, or as necessary to ensure that all Responsible Employees and employees, as the case may be, are familiar with the requirements of this Consent Decree and the Storm Water Permit.

26. <u>New Employees</u>: All new staff who will be Responsible Employees will participate in the Training Program before assuming responsibilities for compliance with this Consent Decree or Storm Water Permit.

27. <u>Visual Observation Training</u>: Bristol shall provide training on how and when to properly conduct visual observations to all Responsible Employees performing visual observations at the Facility. All new staff who will be Responsible Employees will receive this training before assuming responsibilities for implementing the SWPPP.

28. <u>Non-Stormwater Discharge Training</u>: Bristol shall advise all employees responsible for managing hazardous materials and working in manufacturing areas which generate dust or other pollutants with a potential for

release to storm water at the Facility on the Permit's prohibition of non-storm water discharges, sufficient to ensure that such employee(s) can recognize and promptly report any observation to the appropriate Responsible Employee for action.

29. <u>Knowledgeable Representatives</u>: The Training Program shall be provided by a private consultant or representative of Bristol who is familiar with the requirements of this Consent Decree and the Permit.

30. <u>Training Records</u>: Bristol shall maintain training records to document compliance with this Section.

31. <u>Integration of Employee Training into the SWPPP</u>: If and when appropriate, Defendant shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP. Bristol shall also update the SWPPP, if and when appropriate, to identify the positions responsible for implementing storm water management, monitoring, sampling, and SWPPP implementation.

**C. Storm Water Pollution Prevention Plan**

32. Within thirty (30) days of the Effective Date, Bristol shall amend the Facility's SWPPP to incorporate those BMPs set forth in this Consent Decree which in the professional judgment of Defendant's Qualified Industrial Storm Water Professional should be incorporated therein, and submit the updated SWPPP to Coastkeeper within fourteen (14) days thereafter.

33. <u>Site Map and Description</u>: Within thirty (30) days of its completion of the structural improvements required hereunder, and the bio-swale, Bristol shall ensure the SWPPP includes an updated Site Map that complies with the Permit, Section X.E. The Site Map shall clearly denote: (a) the topography and direction of storm water flow for each drainage area of the Facility; (b) identify property boundaries; (c) known or suspected drop inlets;

(d) ground type (pervious or impervious); (e) berms and the materials they are composed of; (f) discharge points; (g) sampling points; (h) bioswales; (i) describe and depict areas of chemical and hazardous waste storage; (j) any permanent structures and features; and (k) all other physical structures or items relevant under the Storm Water Permit and this Consent Decree. During the term of this Consent Decree, if Bristol makes significant changes to the Facility, such as moving a discharge or sampling point, modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs, Bristol shall update the SWPPP within forty-five (45) days and submit the revised SWPPP to Coastkeeper, Regional Board, and State Water Resources Control Board, consistent with the requirements of Paragraphs 35-36 of this Section.

34. <u>Change of Industrial Processes</u>: If, during the term of this Consent Decree, Bristol changes the Facility's industrial processes or operation in a way that materially increases the quantity or frequency of surface water pollutant discharges, then Bristol shall notify Plaintiffs within thirty (30) days of such change(s) and conduct sampling for qualifying pollutants as required by the Permit. These SWPPP revisions shall occur within forty-five (45) days of the changes in operation.

35. <u>Change of Programs</u>: If during the term of this Consent Decree Bristol plans to make revisions to its SWPPP other than those called for hereunder, including revisions to programs detailed within the SWPPP, such as sampling, monitoring, and reporting, Bristol agrees to submit a description of the proposed revisions to Coastkeeper twenty (20) days prior to submittal.

36. <u>Visual Inspection Checklist</u>: Bristol shall create an inspection checklist to be used by Responsible Employees when conducting the visual observations and monitoring required under the Permit and this Consent

Decree.

37. <u>Training Program</u>: Bristol shall include in the SWPPP the Training Program requirements listed in Paragraphs 22-23.

38. **Coastkeeper's Review of the SWPPP**: Defendant shall submit each revised SWPPP to Coastkeeper for review and comment within five (5) business days of its completion. Coastkeeper shall have twenty (20) days from the receipt of any amended SWPPP to propose changes. Within thirty (30) days of notification by Coastkeeper of any proposed changes, Bristol shall either incorporate Coastkeeper's changes, or provide Coastkeeper with a written explanation for its decision not to incorporate a change.

39. **Disputes**: Any disputes between Plaintiff and Bristol as to the adequacy of the SWPPP or any individual program revision implemented hereunder after the Effective Date shall be resolved pursuant to the dispute resolution procedures in Section VI below.

## IV. SAMPLING, MONITORING, INSPECTION & REPORTING

40. **Storm Water Sampling Program**: Bristol shall collect storm water samples from the Facility's discharge location during the term of the Consent Decree, required by, and in accordance with the Permit. For purposes of this Consent Decree, sampling requirements shall be deemed to apply during the Facility's operating hours. Any failure to sample a discharge from the discharge points referenced above shall be documented and submitted to Coastkeeper within ten (10) days of the date a qualifying storm water event occurred which could have been sampled but was not. Bristol shall analyze the samples for the constituents identified in Table 1.

41. **Coastkeeper's Review of Revised M&RP**: Bristol agrees to submit the Monitoring and Reporting Program ("M&RP") to Coastkeeper for review and comment as soon as it is completed but in any event, no later than thirty (30) days from the Effective Date of this Consent Decree. Coastkeeper have fifteen (15) days to

provide comments, if any. If Bristol elects not to modify the M&RP as suggested by Coastkeeper, it shall provide a prompt written explanation of its decision to Coastkeeper. Any disputes as to the adequacy of any revised M&RP as submitted by Bristol shall be resolved pursuant to the dispute resolution provisions in Section VI below.

42. **Additional Revisions to M&RP**: Bristol shall revise the M&RP if there are any material change in a Facility discharge point(s), if Bristol discovers a change in the Facility's storm water discharge point(s), or as applicable to incorporate a material sampling or monitoring change in any Response Plan(s). Bristol shall submit any revised M&RP to Coastkeeper for review and comment within fifteen (15) days of completion. Coastkeeper shall provide comments, if any, to Bristol within twenty (20) days of receipt of any revised M&RP. Within thirty (30) days of its receipt of Coastkeeper's suggested changes, if any, Bristol shall either incorporate Coastkeeper's such changes, or provide Coastkeeper a written explanation for its decision not to include change.

43. **Disputes**: Any disputes as to the adequacy of the M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, as set out in Section VI below.

44. **Sampling**: The following storm water monitoring procedures shall be implemented at the Facility:

44.1. <u>Frequency</u>: During the life of this Consent Decree, Bristol shall collect samples of storm water discharges not less than the four (4) times per year specified in the Permit during each reporting year from the Facility during the operating hours as defined in the SWPPP as a result of a Qualified Storm Event ("QSE") as defined in the Storm Water Permit.

44.2. <u>Discharge Locations</u>: During the life of this Consent Decree, Bristol shall collect samples from all discharge locations specified in the Permit,

as it may be amended incident to completion of the bioswale.

44.3. Parameters: All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

44.4. Change of Industrial Activities: Should industrial processes materially change at the Facility, Bristol shall notify Coastkeeper pursuant to the Notice Provision of Paragraph 55 below. Bristol shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's storm water discharges in significant quantities as a result of the changed industrial processes.

44.5. Lab: Except for pH samples, Bristol shall have all storm water samples required to be collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times, pursuant to 40 C.F.R. Part 136. However, pH will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

44.6. Detection Limit: The laboratory shall thereafter conduct analysis as dictated by method detection limits and test methods described in the Storm Water Permit.

44.7. Lab Reports: Bristol shall request the sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) days of laboratory receipt of the sample.

44.8. Reports to Coastkeeper: During the life of this Consent Decree, Bristol shall provide the full sample reports received under Section 42.7 above to Coastkeeper within fourteen (14) days of receipt of the laboratory report from each sampling event.

44.9. Sampling Reduction: Defendant may discontinue analyzing storm water

samples collected pursuant to this Consent Decree at any discharge location(s) for a constituent listed in Table 1 that is not otherwise required by the Storm Water Permit, if the sample result for the Table 1 constituent is not detected for four (4) consecutive sample results, and Defendant has collected and analyzed the sample pursuant to this Consent Decree.

44.10. **Numeric Limits**:  If any sample reports received under Section 44.7 document exceedances of any of the limits ("Numeric Limits") in Table 1, during a single reporting year, then upon the fourth such exceedance Bristol shall implement the Response Plan requirements of this Consent Decree.

**TABLE APPEARS NEXT**

**Table 1. Numeric Limitations for Storm Water Discharges**

| Contaminant | Test Method | Numeric Limit[1] |
|---|---|---|
| Aluminum | EPA 200.8 | 0.75 |
| Cadmium[2] | EPA 200.8 | 0.0053 |
| Copper[2] | EPA 200.8 | **0.013** |
| Cyanide | SM 4500-CN | NA |
| Iron | EPA 200.7 | 1.0 |
| Lead[2] | EPA 200.8 | **0.112** |
| Nickel | EPA 200.8 | **0.61** |
| Nitrate plus nitrite nitrogen | SM 4500-NO3-E | 0.68 |
| Oil and grease | EPA 1664A | 15 |
| pH | Onsite screening with calibrated instrument | 6.5-8.5 s.u. |
| Silver[2] | EPA 200.8 | **0.183** |
| Total suspended solids | SM 2540-D | 100 |
| Zinc | EPA 200.8 | 0.26 |

[1] All but pH expressed as mg/L. Some Numeric Limits are hardness dependent. The hardness dependent limits are in **bold**, and have been adjusted using methods provided in Appendix J of the 2015 EPA Multi-Sector General Permit and/or the California Toxics Rule as applicable based on hardness data for the Coyote Creek watershed, a tributary to the San Gabriel River, and reported in a technical memo.: Summary of Existing Conditions Data Coyote Creek Watershed Management Plan, Dec. 5, 2005.

[2] Pursuant to 40 CFR 131.38(c)(4)(iii), are expressed as dissolved and as such the limits are based on soluble or dissolved metal concentrations.

45.     **Response Plan Regarding Exceedance of Numeric Limitations**. Bristol shall develop and submit to Coastkeeper a Response Plan describing the steps planned to reduce and/or eliminating the exceedance documented in the sample reports under Section 44.7. Bristol's obligations under the Consent Decree do not displace Bristol's obligations to sample and comply with the Permit's ERA process. Such Response Plan shall be provided to Coastkeeper within 60-days of the date the sample results documenting the second consecutive exceedance are received by Bristol.

45.1.    Requirements: Each Response Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Numeric Limit(s); (2) an assessment of the source of each pollutant exceedance; (3) the identification of additional BMPs, which may include, by way of example, treating storm water prior to discharge from the Facility, that will be implemented to achieve compliance with the Numeric Limit(s); and (4) time schedules for implementation of the proposed BMPs.

45.2.    Time Schedule: The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as reasonably practical, but in no case later than October 1 of that year. If a Response Plan is approved in writing by Coastkeeper, as set forth in Paragraph 45.3 below, Bristol shall also revise its M&RP and SWPPP, as applicable, within thirty (30) days.

45.3.    Coastkeeper's Review of Response Plan: Coastkeeper shall have thirty (30) days from receipt of a Response Plan to propose revisions. However, if Coastkeeper notifies Bristol within thirty (30) days of receipt of the Response Plan that it is unable to provide comments within thirty (30) days, Coastkeeper shall have an additional fifteen (15) days to

comment upon and/or propose revisions to the Response Plan. Within thirty (30) days of receiving Coastkeeper's comments and/or proposed revisions, Bristol shall consider each of Coastkeeper's recommended revisions to accept or reject them. If Bristol rejects any revision, it shall provide an explanation therefore. If Coastkeeper disagrees, it shall timely request to meet and confer, in accordance with this Consent Decree.

45.4. Structural BMPs:  If structural BMPs are proposed, and agreed to between the Parties, which require agency approval, then Bristol shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs. Coastkeeper's consent to Bristol's requested extension shall not be unreasonably conditioned, delayed or withheld.  Anytime a Response Plan is completed after Coastkeeper's review, as set forth above, Bristol shall also revise its M&RP and SWPPP as applicable within thirty (30) days.

45.5. [RESERVED]

45.6. Obligation of Consent Decree:  Bristol shall implement the Response Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

45.7. Diligently File: Bristol shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Response Plan.  Bristol shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the agreed-upon deadlines.

45.8. Implementation into SWPPP:  Within thirty (30) days after BMPs set forth in a Response Plan pursuant to this Consent Decree are implemented, Bristol shall amend the Facility SWPPP to include all

BMP revisions or additions not otherwise already implemented and included in the SWPPP and shall provide Coastkeeper with a copy of such revised SWPPP.

46.     The Response Plan shall include data, drawings, and other design rationale, as appropriate to the BMP, demonstrating how the proposal shall contribute to achieving compliance with Permit and Consent Decree requirements.

47.     Coastkeeper shall have thirty (30) days to comment on the Response Plan. Within thirty (30) days of receipt of Coastkeeper's Response Plan comments, Bristol shall revise its SWPPP and/or M&RP to reflect the changes and /or additional BMPs as set forth in the Response Plan or shall justify in writing why any comment is not incorporated.

48.     If the Settling parties are unable to agree to the adequacy of any Response Plan, either Settling Party may invoke dispute resolution procedures pursuant to Section VI below.

49.     Any concurrence or failure to object by Coastkeeper with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by Bristol shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility' storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the Permit.

50.     **Duty to Evaluate**. Between October 1 and May 31 of each reporting year, Bristol has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Response Plan, and, if Bristol has exceeded the Numeric Limits, make attempts to reduce the concentrations to Numeric Limits or otherwise meet BAT or BCT, as appropriate, until May 31 of that reporting year.  Bristol shall use the results from subsequent storm water samples as they become available to assist with their ongoing evaluation

of the effectiveness of BMPs.

51. **Site Inspections**:  During the life of this Consent Decree, Bristol shall permit representatives of Coastkeeper to perform one annual physical inspections of the Facility, limited to exterior areas of industrial activity associated with storm water discharges under the Permit ("Site Inspection"). Bristol shall permit an additional site inspection to verify the implementation of new or improved BMPs Bristol has yet to complete prior to the annual site inspection or to verify improved BMPs in response to material deficiencies observed during the annual physical inspection.  Such inspections shall be performed during normal business hours.  Coastkeeper shall provide Bristol with four (4) business days' notice in advance of such Site Inspections; provided, however, that if Coastkeeper intends to perform inspections during qualifying storm water events, Coastkeeper shall provide Bristol not less than 24-hour's notice based on National Weather Service forecasts predicting significant precipitation events in the Brea area.  Coastkeeper shall comply with all safety instructions and confidentiality requirements provided to Coastkeeper by Bristol's staff during all Site Inspections.  During Site Inspections, Coastkeeper, may inspect the Facility's exterior storm water management facilities and/or sample any discharges, as well as associated Maintenance Logs, Annual Records, and employee training records required hereunder.  Coastkeeper may also take photos and/or videos relevant to the Facility's compliance with the Permit or Consent Decree.

52. **Document Production**:  During the life of this Consent Decree, Bristol shall provide data and reports submitted to any governmental authority related to its compliance with the Permit or this Consent Decree contemporaneously with their provision to such governmental authority, including uploading information into SMARTS; if completion of the bioswale occurs after the Effective Date of this Consent Decree, Bristol shall provide notice thereof within five (5) days of completion.  In addition, if Coastkeeper requests from Bristol any documents related

to storm water management at the Facility or to this Consent Decree, Bristol shall send Coastkeeper said documents within seven (7) days.

## V. ENVIRONMENTAL MITIGATION PROJECT, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, COMPLIANCE MONITORING AND INTEREST

53. **Environmental Mitigation Project.** Bristol agrees to make a payment of Fifteen Thousand Dollars ($15,000) to the Los Cerritos Wetlands Land Trust to fund environmental project activities that will benefit tidal wetlands within the San Gabriel River Estuary and the associated watershed. Payment shall be made by check, sent by certified mail, or overnight delivery, unless delivered by wire transfer, to: Los Cerritos Wetlands Land Trust, P.O. Box 30165, Long Beach, CA 90853. The payment shall be made within ten (10) days of the Effective Date. Bristol shall provide Coastkeeper with a copy of such payment at the time it is made.

54. **Reimbursement of Fees and Costs.** Bristol shall reimburse Coastkeeper in the amount of Seventy Thousand dollars ($70,000) to cover Coastkeeper's investigation and expert costs and fees, its attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, including negotiating a resolution of this action in the public interest. The payment shall be made within ten (10) days of the Effective Date of the Consent Decree. The payment shall be made via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered by overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

55. **Compliance Monitoring Funds.** To defray Coastkeeper's future fees, costs and/or expenses incurred in connection with Coastkeeper's activities under this Consent Decree, including efforts to monitor Bristol's compliance with this Consent Decree, and to effectively meet and confer and evaluate storm water monitoring

results for the Facility, Bristol shall pay Coastkeeper the amount of twelve thousand dollars ($12,000) for its costs to be incurred in overseeing the implementation of this Consent Decree. Bristol shall make payment to Coastkeeper within ten (10) days of the Effective Date. Payment by Bristol to Coastkeeper shall be made in the form of a wire transfer or check payable to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

56. **Stipulated Penalties**: Bristol shall make stipulated payments for each failure to comply with the terms of Paragraphs 53, 54 or 55 of this Consent Decree, as described in this paragraph. Payments for missed deadlines shall be made to "Los Cerritos Wetlands Land Trust" and delivered via certified mail, overnight delivery, or wire transfer to: Los Cerritos Wetlands Land Trust, P.O. Box 30165, Long Beach, CA 90853. Bristol agrees to make the stipulated payment within thirty (30) days of a missed deadline. Bristol shall provide Coastkeeper with a copy of each such payment at the time it is made.

## VI.   DISPUTE RESOLUTION

57. The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Consent Decree. The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

58. If a dispute under this Consent Decree arises or if a Settling Party believes that a breach of this Consent Decree has occurred, they shall follow the following procedure:

58.1. Meet and Confer: A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the disputed matter(s). The Settling Parties shall schedule a meet and confer in good faith (either telephonically or in

person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

58.2. If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

58.3. <u>Enforcement Fees and Costs</u>: The Parties shall be entitled to seek fees and costs incurred in any such action (which shall not include fees, costs or expenses incurred or obligated during the meet and confer period) pursuant to the provisions set forth in Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and applicable case law interpreting such provisions.

## VII. <u>WAIVER, RELEASES AND COVENANTS NOT TO SUE</u>

59. **Coastkeeper's Release**: Coastkeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates, outside counsel and each of their successors and assigns releases Bristol, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from, and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint at the Facility.

60. **Bristol's Waiver and Release of Coastkeeper**: Bristol, on its own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Coastkeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint at the Facility.

61. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

## VIII. <u>MISCELLANEOUS PROVISIONS</u>

62. **No Admission of Liability.** The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Bristol expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Bristol of any fact, finding, conclusion, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities,

and duties of the Parties under this Consent Decree.

63. **Execution in Counterparts.** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

64. **Facsimile Signatures.** The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

65. **Construction.** The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

66. **Force Majeure**: Bristol will notify Coastkeeper if timely implementation of Bristol's respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of Bristol or its agents, and which could not have been reasonably foreseen and prevented by the respective Bristol's exercise of due diligence. Any delays due to the Bristol's respective failure to make timely and *bona fide* applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond Bristol's control.

66.1. If Bristol claims impossibility, it will notify Coastkeeper in writing within twenty (20) days of the date that Bristol discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree, or the date Bristol should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the

measures taken or to be taken by Bristol to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. Bristol will adopt all reasonable measures to avoid and minimize such non-performance.

66.2.     The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Bristol, due to circumstances beyond the control of Bristol that could not have been reasonably foreseen and prevented by the exercise of due diligence by Bristol, new performance deadlines will be established.

66.3.     If Coastkeeper disagrees with Bristol's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraph 27 of this Consent Decree. In such proceeding, Bristol will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

67.     **Authority to Sign.** The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

68.     **Integrated Consent Decree.** All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

69.     **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

70. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

71. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

72. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

73. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

74. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

75. **Mailing of Documents to Coastkeeper/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Coastkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> Orange County Coastkeeper
> Attention: Colin Kelly
> 3151 Airway Avenue, Suite F-110
> Costa Mesa, California 92626
> E-mail: colin@coastkeeper.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
E-mail:  doug@lozeaudrury.com

Unless requested otherwise by Bristol, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Bristol pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Bristol:

Timothy Scott Wood – President
630 E. Lambert Road
Brea, CA 92821

With copies sent to:

Edwin Varela – Director of EHS
630 E. Lambert Road
Brea, CA 92821
E-mail: EVarela@bristolind.com

Timothy J. Bergere
Montgomery McCracken Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA 19109
E-mail:  tbergere@mmwr.com

Notifications of communications shall be deemed submitted on the date that

CONSENT DECREE        32        Case No. 8:17-cv-00471-JVS-JCG

they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

76.    If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

77.    The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

ORANGE COUNTY COASTKEEPER

Date: _November 16_, 2017

_____ _Garry Brown_ _____
Garry Brown
Executive Director
Orange County Coastkeeper

BRISTOL INDUSTRIES, LLC

Date: _____, 2017

_____
NAME: Timothy Scott Wood
TITLE: President

CONSENT DECREE       33      Case No. 8:17-cv-00471-JVS-JCG

Approved as to form:

LOZEAU DRURY LLP

      Date: _____, 2017

      _____
      Douglas Chermak
      Attorneys for Orange County Coastkeeper

MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP

      Date: _____, 2017

      _____
      Eric Chang
      Attorneys for Bristol Industries, LLC

**IT IS SO ORDERED.**

Date: December 29, 2017

      _____
         Honorable James V. Selna
         United States District Judge
         Central District of California